UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
GUOPING MA and SIYUAN LIU,              )   No. C07-122RSL
                                        )
                    Plaintiffs,         )   ORDER DEFERRING PLAINTIFFS'
       v.                               )   MOTION FOR SUMMARY
                                        )   JUDGMENT AND GRANTING IN
ALBERTO GONZALES, et al.,               )   PART AND DENYING IN PART
                                        )   DEFENDANTS' CROSS-MOTION
                    Defendants.         )   FOR SUMMARY JUDGMENT
_____)

**I. INTRODUCTION**

This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment" (Dkt. #14) and "Defendants' Cross-Motion for Summary Judgment" (Dkt. #15). On January 26, 2007, plaintiffs, proceeding pro se, filed a complaint alleging that defendants have unreasonably delayed processing of plaintiffs' I-485 applications for adjustment of status. See Dkt. #1 (Plaintiffs' Complaint for Injunctive, Mandamus, and Declaratory Relief). In their motion for summary judgment, plaintiffs now seek an order requiring United States Citizenship and Immigration Services ("USCIS") to adjudicate the I-485 applications. In opposition, defendants cross-move for summary judgment contending that the government has acted reasonably in processing plaintiffs' applications and move to dismiss plaintiffs' claims against all defendants except Michael Chertoff in his capacity as the Secretary of the Department of Homeland

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT

Security. For the reasons discussed below, the Court defers plaintiffs' motion for summary judgment, and grants in part and denies in part defendants' cross-motion for summary judgment.[1]

## II. DISCUSSION

### A. Background.

Plaintiffs Guoping Ma and Siyuan Liu (hereinafter "plaintiffs"), husband and wife, and citizens of the People's Republic of China, seek adjudication of their pending Form I-485 Applications for Adjustment of Status so that they may adjust their U.S. immigration status to that of Lawful Permanent Residents (LPR or "green card" holders). Plaintiffs filed their I-485 forms with United States Citizen Immigration Services ("USCIS") Nebraska Service Center on December 30, 2004. See Dkt. #15, Ex. B (Heinauer Decl.) at ¶¶2-3. USCIS transmitted their applications for adjustment of status to the FBI on or about February 4, 2005, requesting that the FBI perform a "name check" investigation. See Dkt. #15, Ex. A (Cannon Decl.) at ¶36. The name check has not been completed by the FBI, thus plaintiffs' applications remain pending. See Dkt. #15, Ex. B (Heinauer Decl.) at ¶¶17, 19.

When an individual files an I-485 application, USCIS conducts several forms of background checks to ensure that the applicant is eligible to adjust status to lawful permanent resident and that he or she is not a risk to national security or public safety. Id. (Heinauer Decl.) at ¶10. One of those checks is an FBI fingerprint check for relevant criminal history records on the alien. Id. The fingerprint check must be less than fifteen months old at the time the

---

[1] In a separate action in this judicial district styled Chen v. Chertoff, et al., Case No. C06-1760TSZ, the Honorable Thomas S. Zilly analyzed the same legal arguments that defendants raise here in their cross-motion for summary judgment. See Dkt. #20 in C06-1760TSZ (filed August 30, 2007). In the interest of judicial economy, this Court incorporates a substantial part of the well-reasoned opinion of Judge Zilly, and for the convenience of the parties and for clarity in the record, the Court reiterates the legal analysis below.

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT          -2-

application is adjudicated. Id. at ¶14. Plaintiffs were each fingerprinted on February 24, 2005 and May 26, 2006 to ensure that their fingerprint checks remain current. Id.

Another check is conducted against the Interagency Border Inspection System ("IBIS"), which contains information related to persons who are wanted or under investigation for serious crimes of suspected terrorism-related activity. Id. at ¶10. Plaintiffs' preliminary IBIS background checks have been completed. Id. at ¶15. Any remaining IBIS checks, if necessary, will be performed at the time of final adjudication of the applications. Id.

In addition to the fingerprint and IBIS background checks, an FBI name check is run against FBI investigative databases. Id. at ¶10; see also Dkt. #15, Ex. A (Cannon Decl.) ¶¶5-12 (describing name check process). Plaintiffs' name check request was received by the FBI from USCIS on or about February 4, 2005, and has not been completed. Id. (Cannon Decl.) ¶ 36. Plaintiffs' applications for adjustment of status remain pending only for completion of the FBI name checks. See Dkt. #15, Ex. B (Heinauer Decl.) ¶¶14, 15, 17 (stating that "their fingerprint checks remain current," their "preliminary IBIS checks have been completed," but "[t]he name checks remain pending"). Once the required FBI name checks are complete, plaintiffs' applications can be adjudicated. Id. at ¶19 ("Cases in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Plaintiffs' FBI name checks are pending. A response is required from the FBI before the case can be adjudicated."); ¶8 ("Co-plaintiff's application for adjustment of status can't be adjudicated until the principal worker's case is approved.").

The FBI is performing the name checks in response to USCIS's request in accordance with the procedures outlined in the Cannon Declaration (described in part below). See Dkt. #15, Ex. A (Cannon Decl.) at ¶36. The results of the name checks will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol. Id. The FBI

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT        -3-

cannot provide a specific or general time frame for completing any particular name check submitted by USCIS. Id. at ¶34.

Historically, approximately 68 percent of the name checks submitted by USCIS are electronically checked and returned to USCIS as having "No Record" within 48-72 hours. Id. at ¶13. A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual. Id. For the remaining name check requests, a manual name search typically completed within 30-60 days historically identifies an additional 22 percent of the USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate. Id. at ¶14. Follow-up on the remaining 10 percent requires retrieving and reviewing electronic and paper records. See id.

There are numerous factors that contribute to delays in the processing of name check requests. Id. at ¶¶21, 34. One is the volume of incoming name checks. Incoming name checks, averaging about 71,000 per week, outpace completed name checks, averaging about 68,000 name checks per week. Id. at ¶21. The number of "hits" on a name when it is first reviewed may further contribute to a delay in processing a name check request. Id. at ¶22. The processing of common names also contributes to a delay. Id. at ¶23. The accessibility of the FBI record needed for review also contributes to a delay; a record could be at one of over 265 possible locations across the country. Id. at ¶24. None of these reasons for delay, however, has been cited as a reason why plaintiffs' name checks have been delayed.

As directed by USCIS, the FBI processes name check requests on a "first in, first out" basis, unless USCIS directs that a name check be expedited. Id. at ¶25. Expedited name requests mean that an employee is not available to work on a normal name check request. Id. at ¶25. An alien who has applied for adjustment of status may apply for and obtain employment authorization for the time the application is pending. See Dkt. #15, Ex. B (Heinauer Decl.) at ¶20. Most applicants for adjustment of status may also apply for and obtain advance parole to

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT         -4-

enable them to travel abroad during the pendency of their application.  Id.  Plaintiffs each currently hold an employment authorization document valid through October 15, 2007 and an advance parole travel document valid to October 12, 2007.  Id. at ¶20.

**B.     Procedural History.**

On January 26, 2007, plaintiffs filed this action, asserting jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedures Act ("APA"), 5 U.S.C. 701 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, and federal question jurisdiction under 28 U.S.C. § 1331.  See Dkt. #1 (Complaint) at ¶¶ 1, 13.  In their motion, plaintiffs seek to compel action on their I-485 applications under the Mandamus Act and the APA.  See Motion at 3.

Plaintiffs filed suit against the following:  (1) Alberto Gonzales, Attorney General of the United States; (2) Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"); (3) Robert S. Mueller, III, Director of the Federal Bureau of Investigation ("FBI"); (4) Emilio T. Gonzalez, Director of United States Citizenship and Immigration Services ("USCIS"); (5) Gerard Heinauer, District Director of the Nebraska USCIS Service Center; (6) the Department of Justice ("DOJ"); (7) the Department of Homeland Security ("DHS"); (8) USCIS; and (9) the FBI.  On June 5, 2007, the Court denied defendants' Motion to Dismiss, which was filed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  See Dkt. #11 (adopting Order in C07-0096-RSM, Dkt. #9).  The Court concluded that defendants have a non-discretionary duty to process plaintiffs' applications to adjust status.  Id.

Plaintiffs moved for summary judgment seeking an order compelling defendants to adjudicate their I-485 applications.  In response, defendants filed a cross-motion for summary judgment arguing that the Court lacks jurisdiction over all defendants except Chertoff, and that plaintiffs cannot show as a matter of law that USCIS unreasonably delayed the processing of their I-485 applications.

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT            -5-

### C. Summary judgment standard.

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### D. Jurisdiction over defendants.

Defendants argue that the Court lacks jurisdiction over all defendants except Michael Chertoff. See Cross-Motion at 5. Defendants rely on Dmitriev v. Chertoff, 2007 WL 1319533 (N.D. Cal. 2007), which found that "[s]ince March 1, 2003, the Department of Homeland Security is the agency responsible for implementing the Immigration and Nationality Act." Dmitriev at *4 (citing 6 U.S.C. § 271(b)(5), 557). Accordingly, the Dmitriev Court held that "the only relevant [d]efendant is Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security," and dismissed defendants Emilio T. Gonzalez, Director of USCIS, and Robert S. Mueller, III, Director of the FBI. Id.; accord Huang v. Chertoff, 2007 WL 1831105 at *3 (N.D. Cal. June 25, 2007). Faced with the same issue, the Northern District of California subsequently declined to dismiss the USCIS defendants, and only dismissed the FBI defendant. Konchitsky v. Chertoff, 2007 WL 2070325 (N.D. Cal. July 13, 2007). The Konchitsky Court reasoned that USCIS is a division of the DHS and, thus, the court has jurisdiction to require the USCIS defendants to process the plaintiff's I-485 application within a reasonable amount of time. Id. at *6. As in Dmitriev, the Konchitsky Court held that the court lacks jurisdiction to compel the FBI to perform name checks in connection with adjustment of status applications, reasoning that the FBI's involvement in processing name checks arises not by statute or regulation, but by contract between USCIS and FBI. Id. This Court agrees with the analysis in Konchitsky.

Accordingly, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment to dismiss all defendants except Chertoff. The Court grants in part the

motion and dismisses defendants: Alberto Gonzales, Attorney General; Robert S. Mueller, III, Director of the FBI; the DOJ; and the FBI. The Court denies in part the motion and declines to dismiss: Emilio T. Gonzalez, Director of USCIS; Gerard Heinauer, Director of the USCIS Nebraska Service Center; the DHS; and USCIS.

**E.   Unreasonable delay.**

Plaintiffs base their mandamus action on sections 555(b) and 706(1) of the APA, which require plaintiffs to demonstrate that USCIS unreasonably delayed the processing of plaintiffs' applications. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"); see Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999) (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus or a mandatory injunction under the APA, or both). Thus, the critical question before the Court is whether there has been an unreasonable delay by USCIS in processing plaintiffs' applications to adjust status.

Section 706 of the APA "leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999). The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. § 706(1):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason';
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT           -7-

> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting Telecomms. Research & Action v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to as the "TRAC factors")).

The first TRAC factor requires an agency to govern decision-making with a rule of reason. Defendants argue that the FBI's "first in, first out" policy is deserving of deference, and that the FBI needs time to perform an "accurate and thorough" check. See Cross-Motion at 8. Plaintiffs point out, correctly, that the FBI has provided no evidence confirming that plaintiffs' checks have been processed in a "first in, first out" fashion, nor has the FBI provided any evidence as to why it needs many years to conduct an "accurate and thorough" check on plaintiffs. See Dkt. #16 at 7.

The second TRAC factor requires deference to a statutory or regulatory timetable. In their motion, plaintiffs contend that under 8 U.S.C. § 1571, Congress imposed a specific timetable for the processing of immigration status applications of no longer than 180 days after initial filing. See Motion at 5. In their cross motion, defendants reject this argument, contending that there is neither a statutory nor regulatory timetable in place for the FBI name check or USCIS's adjudication of an application to adjust status and assert that the 180-day provision in 8 U.S.C. § 1571(b) is a so-called "sense of Congress" statute that is non-binding and does not impose any obligation on USCIS. See Cross-Motion at 10 (quoting 8 U.S.C. 1571(b)) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application"), and citing

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT         -8-

Yang v. Cal. Dep't of Social Serv., 183 F.3d 953, 961-62 (9th Cir. 1999) (stating "the sense of Congress provision amounts to no more than non-binding, legislative dicta"). Defendants maintain that in the absence of any statutory or regulatory guidelines, the Court should consider the factors that contribute to the backlogs faced by the FBI and USCIS. See, e.g., Dkt. #15 (Cannon Decl.) at ¶¶ 16-18 (describing growth of the name check program and the implementation of more thorough searches since November 2002 due to heightened national security concerns).

Several courts facing the same issue have concluded that "[a]lthough Congress has not established a mandatory time frame for the USCIS to complete the adjudication, Congress sets a normative expectation in 'The Immigration Services and Infrastructure Improvements Act of 2000' of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application." Konchitsky, 2007 WL 2070325 at *4 (citing 8 U.S.C. § 1571); Abbasfar v. Chertoff, 2007 WL 2409538 at *3 (N.D. Cal. Aug. 21, 2007) ("8 U.S.C. § 1571 provides a meaningful standard for the pace of adjudication of adjustment of status applications"). The Court finds this authority persuasive.

The third TRAC factor provides that delays are less tolerable when human health and welfare are at stake, as opposed to economic regulation. See Singh v. Still, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2006) (finding human health and welfare to be at stake in case involving delay of I-485 application to adjust status). Defendants argue that this third factor overlaps with the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay. See Cross-Motion at 11. Defendants characterize the prejudice to plaintiffs as mere inconvenience, and point out that plaintiffs may receive employment authorization and advance parole to allow them to travel abroad during the pendency of their applications. Id. Defendants emphasize that plaintiffs' interests are minimal as compared to the security interests of the nation, particularly in the post-9/11 era. Id. at 12. Plaintiffs respond that the delay in their

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT         -9-

application has caused them career stagnation and the inability to travel freely to visit ailing parents. See Dkt. #16 at 9. Plaintiffs also note their interest in accruing time to be eligible for naturalization as citizens of the United States. See Dkt. #1 at ¶38; see Singh, 470 F. Supp. 2d at 1070 ("Respondents' delay impacts Mr. Singh's ability to seek United States citizenship and all the rights and privileges attendant thereto.").

The fourth TRAC factor requires the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. Defendants argue that expediting delayed agency action will intrude on the agency's discretion to fulfill its highest priority of safeguarding the nation. See Cross-Motion at 12. Defendants also contend that moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. Id. at 13. In response, plaintiffs argue that defendants have failed to explain, with any specificity, how expediting their application will threaten the agency's ability to safeguard the nation. See Dkt. #16 at 8-9.

The sixth TRAC factor notes that the Court need not find any impropriety on the agency's part in order to hold that agency action is unreasonably delayed. As discussed below, because the government has provided no particularized reason for the name-check delay as applied to plaintiffs, the Court without more, cannot assess this factor.

Overall, defendants have failed to put forth any facts specific to plaintiffs' name checks. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Gelfer v. Chertoff, 2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted). Courts within the Ninth Circuit in similar cases have denied Rule 12(b)(6) motions to dismiss brought by the government where USCIS has simply pointed to the FBI's failure to complete the name check, and where there were no reasons why the application was "particularly troublesome." Id. (more than two-year delay not reasonable as a matter of law); see also Konchitsky, 2007 WL 2070325 at *6 ("without a

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT        -10-

particularized explanation for the delay . . . more than two year delay of plaintiff's application [is] unreasonable as a matter of law"); Mazouchi v. Still, 2007 WL 2070324 at *5 (N.D. Cal. July 13, 2007) (same, as applied to four year delay); Liu v. Chertoff, 2007 WL 2023548 at *4 (E.D. Cal. July 11, 2007) (two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay," despite evidence of large volume of applications received and the extensive background checks required to process them); Qiu v. Chertoff, 2007 WL 1831130 at *3 (N.D. Cal. June 25, 2007) (no explanation, other than pending FBI name check, why application "stagnant" for three years); Huang, 2007 WL 1831105 at *2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to the cause of the delay).

One case out of the Northern District of California granted summary judgment in favor of plaintiff, and ordered USCIS to complete the adjudication of the application, where USCIS failed to provide specific reasons for the delay. See Singh, 470 F. Supp. 2d at 1065, 1072 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS, and, alternatively, USCIS's failure to provide information via in camera review). In Singh, the Court stated that although "national security must be considered a competing priority of the highest order[,] . . . the mere invocation of national security is not enough to render agency delay reasonable per se." Id. at 1069.[2]

---

[2] It is noteworthy, however, that at the time summary judgment was granted in favor of Mr. Singh, Mr. Singh's FBI name check had been expedited as a result of the litigation and had cleared. Other distinguishing aspects of the Singh case are that: (1) Mr. Singh had waited seven years for adjudication, in comparison to plaintiffs' two-and-a-half years; (2) USCIS was partially to blame for the delay (in addition to the FBI) because USCIS had taken two-and-a-half years to initiate the name check with the FBI, and (3) Mr. Singh's application to adjust status was based in part on a grant of asylum, which meant that the government had an opportunity to raise national security concerns before an immigration law judge in the asylum proceedings. See Singh, 470 F. Supp. 2d at 1065, 1068-70.

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT         -11-

The Government argues that "[m]any courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods." See Cross-Motion at 15. Defendants rely on three district court cases from outside the Ninth Circuit, each of which can be distinguished. In Espin v. Gantner, the Court held that it lacked subject matter jurisdiction to compel agency action on a pending application to adjust status, finding that the action is "wholly discretionary." 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005). As previously noted, this Court, as well as other Courts in the Western District of Washington, have concluded that USCIS's action to adjudicate applications to adjust status is non-discretionary and, accordingly, have held that there is subject matter jurisdiction. The Espin Court also dismissed the claim for failure to state a cognizable claim based on a "limited resources" and "substantial caseload" rationale that has not been adopted by district courts within the Ninth Circuit in the absence of a particularized showing as to the individual application at issue.

Defendants rely on another district court case out of the Southern District of New York for the proposition that a high volume of applications justifies a five-year delay. See Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005). Defendants fail to point out that plaintiff's application to adjust status in Saleh was delayed as a result of a Congressionally-mandated cap of 10,000 on the number of asylees whose status may be adjusted to that of lawful permanent resident each year, in addition to the high volume of applications based on asylee status. See id. at 510, 513 (citing 8 U.S.C. § 1159(b)). Thus, in Saleh, USCIS had published a schedule setting forth the time periods during which it anticipated it would consider asylees' applications according to when such applications were filed. See id. at 513. The plaintiff in Saleh filed the lawsuit prior to the expected consideration period. See id. Here, defendants have not pointed to any cap on the number of employment-based I-485 applicants whose status may be adjusted to lawful permanent resident each year. Nor does the Court have any information regarding the

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT          -12-

average time between the filing of, and consideration of, adjustment of status applications for applicants generally or for applicants whose eligibility is based the EB-2 preference category or derivative applications based on this category.

Finally, defendants rely on a district court case from the Northern District of Texas, which held, in the naturalization context, that a 15-month delay was not unreasonable. See Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005). The Alkenani Court in dicta suggested that "delays approximating two years may be unreasonable." Id. at 657 n.6. In the present case, plaintiffs have waited over thirty months for a decision and remain in "perpetual limbo," id. at 657, without any particularized explanation from USCIS for the delay.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART "Defendants' Cross-Motion for Summary Judgment" (Dkt. #15) and DISMISSES defendants Alberto Gonzales, Robert S. Mueller, the DOJ, and the FBI. The Court DENIES IN PART "Defendants' Cross-Motion for Summary Judgment" on the issue of unreasonable delay and declines to dismiss defendants: Michael Chertoff, Emilio T. Gonzalez, Gerard Heinauer, the DHS, and USCIS.

The Court DEFERS "Plaintiffs' Motion for Summary Judgment" (Dkt. #14) and ORDERS defendants to provide the Court with particularized information that explains the over thirty-month delay as to plaintiffs' name checks. The Court recognizes that defendants will have to obtain this information from the FBI, which is no longer a defendant in this case. Defendants shall submit this information to the Court, either through declarations or via in camera review, by **October 29, 2007**. Any brief filed in connection with the new information shall not exceed six pages. No response to the supplemental briefing shall be filed by plaintiffs unless requested by the Court. Defendants are on notice that the Court may sua sponte grant summary judgment in favor of plaintiffs if defendants fail to provide the particularized information.

//

DATED this 17th day of September, 2007.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DEFERRING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT      -14-